**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY HIRSCHY, | No. CIV S-10-2520-CMK |
| Plaintiff, | |
| vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 20). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on October 29, 2007, alleging an onset of disability on July 25, 2007,[2] due to disabilities including degenerative disc disease, cervical and thoracic scoliosis, and chronic lumbar and cervical sprain/strain (Certified administrative record ("CAR") 59-60, 80-82, 109-111, 124-131). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on August 25, 2009, before Administrative Law Judge ("ALJ") Peter F. Belli. In a November 6, 2009 decision, the ALJ concluded that plaintiff is not disabled[3] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Plaintiff originally reported an onset of disability on March 15, 2007. However, as he last worked on July 25, 2007, the alleged onset date was adjusted to July 25, 2007. (CAR 120).

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1. The claimant meets the insured status requirements of the Social Security Act though December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 25, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; chronic sprain in lumbar cervical, and thoracic spine; and mild obesity. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as he can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 8 hours in a normal work day with normal breaks and a sit/stand option at will. He can sit for approximately 45 minutes to an hour without leaving his work station. The claimant can stand and walk for 6 hours out of an 8 hour work day, provided he can change positions approximately once each hour. The claimant is limited to occasional stooping, crouching, crawling, bending, and kneeling. The claimant is unable to climb ladders, ropes, or scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 28, 1958 and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 25, 2007 through the date of this decision (20 CFR 404.1520(g)).

(CAR 16-25). After the Appeals Council declined review on July 20, 2010, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ erred in three ways:  (1) the ALJ failed to accord the appropriate weight to the opinion of plaintiff's treating physician; (2) the ALJ improperly determined that plaintiff was not credible; and (3) the testimony of the vocational expert was unreliable.

### A.   MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

1  finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and

2  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

3  professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional,

4  without other evidence, is insufficient to reject the opinion of a treating or examining

5  professional. See id. at 831. In any event, the Commissioner need not give weight to any

6  conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,

7  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

8  see also Magallanes, 881 F.2d at 751.

In the ALJ's opinion, he offered the follow analysis of the medical opinions:

> As for the opinion evidence, the undersigned gives considerable weight to the opinions provided by State Agency medical sources and Dr. Vesali's narrative residual functional capacity. These sources indicated that the claimant could perform medium level work that did not require climbing ladders, ropes, or scaffolds. These opinions are well supported by the treatment records and consultative examination findings. They are also supported by the claimant's chiropractor, Mr. Dollinger, who stated that the claimant should be able to [return] to work by May 5, 2008. Furthermore, the "disability slips" given by Mr. Dollinger were not accompanied by any imaging studies such as an x-ray, CT or MRI (Case Analysis/Medical Evaluation - DDS, Ex 6f). Moreover, physical therapist Mr. Egert, opined that the underlying, unifying diagnosis of the claimant's pain symptom was osteoarthritis, which is the most common form of arthritis. Nonetheless, the undersigned finds that it is reasonable to limit the claimant to light, rather than medium work due to his history of back and neck pain and postural limitations.
>
> . . .
>
> The more restrictive limitations in Dr. Caviness's medical source statement are rejected and given little weight because they are not supported by the limited findings. Dr. Caviness, the claimant's treating physician, reported that the claimant could never bend, climb, balance, stoop, crouch, crawl, or kneel. He also found that the claimant could not stand or walk for more than 1 hour at a time, and that the claimant could not sit for more than 3 hours at a time. Remarkably, with symptoms this severe Dr. Caviness never referred the claimant to a specialist, nor [did he] recommend a spine epidural injection, a discogram, or lumbar surgery. Instead, Dr. Caviness continued to repeatedly prescribe the same medications. One x-ray revealed severe lumbar disc degeneration. However, again Dr. Caviness prescribed the claimant prescription medication. Moreover, with medical impairments this severe Dr. Caviness's assessment of the claimant's condition should have revealed clear signs of severe atrophy. Instead, the claimant, by his own admission, reported that he can do 30 minutes of housework, drive for 30 minutes,

6

        and testified that he recently went clothes shopping.  Moreover, there was no evidence of atrophy on exam.  Furthermore, the undersigned does not give much weight to his medical source statement because by the claimant's own admission, Dr. Caviness had very minimal contact with the claimant.  As a treating source, Dr. Caviness had approximately 6 visits with the claimant in the past year, yet his findings were extreme in comparison to the record as a whole.

(CAR 18-19).

        Plaintiff contends the ALJ erred in rejecting the opinion of his treating physician, Dr. Caviness.  He counters each reason articulated by the ALJ for discrediting Dr. Caviness's opinion, arguing each is an improper basis for the ALJ to have relied on.  He argues Dr. Caviness's opinion is the only opinion based on a March 28, 2008, x-ray which adds support to the limitations found by Dr. Caviness; no other medical opinion had the x-ray results when forming the opinions related to plaintiff's limitations.  Those x-rays are important because they show severe disc degeneration, not mild as the ALJ states.  Thus, plaintiff believes, Dr. Caviness's opinion is uncontroverted and should have been credited as a treating physician opinion and given controlling weight.  He also argues the treatment received, and the frequency of his visits with Dr. Caviness were appropriate, and not a basis for discrediting the doctor's opinion.  In addition, plaintiff argues Dr. Egert, a physical rehabilitation specialist, was erroneously not treated as a medical source, but was referred to as a physical therapist.  Finally, plaintiff argues the ALJ should have provided clear and convincing reasons to discredit Dr. Caviness's opinion as it is uncontroverted, which were not provided.

        Defendant counters that the ALJ did not err in discounting Dr. Caviness's opinion, noting that the ALJ's decision is well supported by the record.  Specifically, Dr. Caviness's opinion is controverted by the examining physician as well as three reviewing physicians, one of whom did have the 2008 x-ray to review.  Regardless, the examining physician, Dr. Vesali's, opinion is based on independent clinical findings and is a sufficient basis to discount plaintiff's treating physician's opinion.

///

1          Dr. Vesali performed a comprehensive orthopedic evaluation of plaintiff on
2 December 20, 2007.  (CAR 182-86).  During the examination, plaintiff complained of neck,
3 elbow, and back pain, plus pain and numbness in his legs.  His medication at the time included
4 Naprosyn, Aspirin and Ibuprofen.  Dr. Vesali noted that plaintiff walked with a limp, which was
5 more noticeable when asked to walk around the examination room compared to observing his
6 walk outside the examination room.  Plaintiff did not have any difficulty removing his shoes or
7 putting them back on, nor getting on or off the examination table.  Upon examination, Dr. Vesali
8 found some inconsistencies during the Romberg test; plaintiff's tandem gait and heel-knee test
9 were normal.  Dr. Vesali then conducted, *inter alia,* a range-of-motion examination, motor
10 strength and muscle bulk and tone examination.  Dr. Vesali found plaintiff experienced some
11 pain at the end of the range of motion in both the cervical and lumbar regions.  Plaintiff's motor
12 strength was 5/5 and 4/5, but Dr. Vesali questioned whether plaintiff applied 100 percent effort.
13 Plaintiff had normal muscle bulk and tone in both upper and lower extremities, but decreased
14 light touch sensation in his fingers; Dr. Vesali again noted some inconsistencies in the sensory
15 examination of plaintiff's lower extremities.  Based on his examination, Dr. Vesali found
16 plaintiff should be able to walk six hours in an eight-hour day with normal breaks; stand and sit
17 six hours in an eight-hour day with normal breaks; lift and carry 50 pounds occasionally, 25
18 pounds frequently; no postural or manipulative limitations; and some limitations on work that
19 needs normal visual acuity on both eyes.  (CAR 186).
20          Dr. Vesali's opinion, and the record as a whole, was reviewed by three Agency
21 physicians, who each reviewed the evidence and substantially agreed with Dr. Vesali's findings.
22 (CAR 187-92, 204-05, 212-13).
23          On February 28, 2008, plaintiff had a consultation with Dr. Robert Egert.  Dr.
24 Egert noted plaintiff was experiencing pain in his back, knee and neck, for which he was referred
25 to Dr. Egert by plaintiff's chiropractor.  During that examination, Dr. Egert noted plaintiff
26 reported his medication included Ibuprofen and several vitamins.  Plaintiff also reported his

current level of function included watching television/movies for 8 hours, and bible study for two hours, was able to stand for 10-hours (compared to a prior level of 40-hours), was able to sit for 7-hours (as compared to 3-hours), but was only able to drive for 15 to 20 minutes (as compared with 2-hours), and walk for half a mile (compared with 5 miles previously). Plaintiff reported he was functioning at about thirty percent of his normal non-work activities. On examination, Dr. Egert found plaintiff's back was tender to palpitation, his range of motion was slightly restricted in the cervical area, and more limited in the lumbosacral area (noting 20 degrees of lumbar anteflexion, corrected to some degree, and difficulty with forward flexion due to lumbar and knee pain). Dr. Egert opined that plaintiff's underlying, unifying diagnosis will likely be that of osteoarthritis, that anti-inflammatory medication may reduce plaintiff's joint effusion, and that plaintiff may benefit from physical therapy, particularly an aquatic-based program. However, no follow-up was anticipated, pending receipt of diagnostic laboratory studies. (CAR 224-28).

Dr. Caviness completed a Treating Source Statement and Residual Functional Capacity Evaluation Form for plaintiff on July 25, 2008. Dr. Caviness opined that due to plaintiff's pain and disc degeneration, he was limited in his ability to lift more than 10 pounds, reaching to occasionally, standing or walking for a longer than 15 minutes without interruption and one hour total in an 8-hour day, and sitting for more than 45 minutes without interruption and three hours total in an 8-hour day. In addition, Dr. Caviness opined that plaintiff could never bend, climb, balance, stoop, crouch, craw or kneel, due to his disc degeneration, and he would need to change positions frequently. Dr. Caviness noted plaintiff takes Vicodin for his pain. (CAR 215-18).

As for plaintiff's arguments, the undersigned does not agree that Dr. Caviness's opinion was uncontroverted. Even if Dr. Vesali did not have plaintiff's March 2008 x-ray to review, his opinion was based on an examination of plaintiff, constituting independent clinical findings. To be a conflicting opinion, the opinions need not be based on the same clinical findings; all that is required is that the opinions are supported by clinical findings. Dr. Vesali's

1   opinion is supported by clinical findings.  Thus, Dr. Vesali's opinion contradicted Dr. Caviness,
2   a conflict the ALJ was allowed to resolved.  See Andrews, 53 F.3d at 1041.  The ALJ provided
3   several reasons in support of his resolution of the conflicting opinions.  These reasons, including
4   limited clinical findings to support the degree of limitations and the conservative treatment
5   received, are specific and legitimate.  In addition, the ALJ acknowledged plaintiff's x-ray
6   showing the disc degeneration, and Dr. Egert's opinion that plaintiff likely has osteoarthiris.
7   Thus, the undersigned finds the ALJ did not ignore the evidence in the record.  The reasons
8   provided for resolving the conflicting opinions, and determining plaintiff's limitations, are
9   specific and legitimate reasons supported by substantial evidence.  The undersigned finds no
10  error in the ALJ's treatment of the medical opinions.

### B.    PLAINTIFF'S CREDIBILITY

12          The Commissioner determines whether a disability applicant is credible, and the
13  court defers to the Commissioner's discretion if the Commissioner used the proper process and
14  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit
15  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903
16  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d
17  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible
18  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative
19  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not
20  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d
21  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),
22  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).
23          If there is objective medical evidence of an underlying impairment, the
24  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely
25  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d
26  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ found plaintiff's allegations regarding his functional limitations not fully credible due to the following:

> The claimant testified that he cannot sit for more than 45 minutes, nor can he stand or walk without taking a break every 15 minutes. He indicated that he has to lie down during the day, and that he could lift only very small items. However, these allegations are not credible. As shown above, the claimant has complained of various back, neck, and leg impairments but has only received conservative treatment. The claimant's treatment includes brief physical therapy and adjustments at the chiropractor. On February 13, 2008, in an Employment Development Department statement, chiropractor, Mr. Dollinger estimated that the

claimant, even if still under treatment, would be able to perform his regular work by May 5, 2008 (Medical Reports/State Disability Claim, Ex. 10F, pg. 11). Disability Determination Services found that the claimant's credibility is poor due to inconsistencies and the fact that there was no new evidence to demonstrate significant changes from the initial determination (Case Analysis/Medical Evaluation - DDS, Ex 6f). According to the record, the claimant has never been to a specialist and has only seen his treating physician Dr. Caviness, approximately 6 times over the past year. Clinical findings were often unremarkable, or showed only tenderness or limited restriction in the claimant's range of motion. Strength findings were normal. X-rays showed some mild disc degeneration. One x-ray revealed severe lumbar disc degeneration. However, at all times the claimant was only treated with prescription medication. Although, he stated that his activities of daily living were quite limited, there is no evidence to support a conclusion that this is due to his impairments. Moreover, he testified that he is able to do 30 minutes of light housework before he becomes "worn out". This fact is not consistent with his claim that he cannot stand or walk without taking a break every 15 minutes. Initially, the claimant alleged that he could lift 20-25 pounds, but later stated he could lift no more than 10 pounds. Although, the claimant alleged a lesser lifting limitation, he did not report any new impairment to explain his worsening condition. The claimant received continuous chiropractic treatment but never sought out additional or alternative treatment once it became apparent that his current course of treatment was ineffective.

. . .

Dr. Vesali's report provided specific findings consistent with symptom magnification. Specifically, the claimant had inconsistent normal and abnormal Romberg tests during the same examination. During the comprehensive evaluation Dr. Vesali observed that claimant walked with a limp, but that he did not have difficulty taking off his sneakers or getting on and off the examination table. Also, he noted that the claimant walked with a more "noticeable limp" when he requested the claimant walk inside the examination room. He reported that the claimant was in "no acute distress" (Orthopedic Examination and Evaluation, Ex. 2F). Dr. Vesali also notes some "inconsistencies" during the Romberg test. Initially, the claimant's Romberg test showed abnormal findings. Notably, when Dr. Vesali conducted the Romberg test a second time, during the same visit, the claimant's findings were normal. The inconsistencies between the two Romberg test's and the claimant's more "noticeable limp" suggest possible exaggeration of symptoms or that the claimant was not fully [cooperative]. He also noted that the claimant did not use an assistive device for ambulation (Orthopedic Examination and Evaluation, Ex. 2F). Moreover, Dr. Vesali found that with the exception of the claimant's right hand grip he had full motor strength. However, he also provided that he was "not sure if the claimant was 100 percent cooperative with the examination".

///

>Mr. Egert noted that the objective findings supported a conclusion of osteoarthritis, which is the most common form of arthritis. Thus, the record as a whole supports a conclusion that the claimant's allegations regarding his symptoms and limitations are not credible.

(CAR 17-18).

Plaintiff argues the reasons set forth by the ALJ are insufficient cogent reasons to discredit his testimony. The defendant contends the reasons given are legally sufficient, especially since the determination is based on plaintiff's conservative treatment, the suggestion of malingering, or at least symptom magnification, and lack of full cooperation during the consultative examination.

The undersigned finds the reasons set forth by the ALJ are legally sufficient. Specifically, the ALJ determined that the treatment plaintiff received was fairly conservative, which is inconsistent with the extreme limitations purported, and his behavior during the consultative examination was not fully creditable given the suspected symptom magnification and lack of full cooperation. The undersigned finds these reasons are supported by the evidence, and giving the ALJ the proper deference, finds no error in the credibility determination.

### C.   VOCATIONAL EXPERT'S TESTIMONY

Plaintiff's final contention is that plaintiff's residual functional capacity (RFC) assessment is not supported by substantial evidence rendering the vocational expert's (VE) opinion, based on a hypothetical question which failed to accurately reflect plaintiff's abilities, insufficient. He argues that based on the ALJ's improper evaluation of the medical opinions, the residual functional capacity assessed is erroneous. In addition, plaintiff argues the ALJ erred in failing to ask the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles (DOT).

The ALJ may meet his burden by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ posed the following hypothetical to the vocational expert:

> If we take a hypothetical individual similar to the claimant who's age 50, soon to be age 51 who has a high school education, work history as in the record who can lift, carry, push and/or pull occasionally twenty pounds, frequently ten, can sit eight hours out of an eight-hour day with normal breaks and a sit/stand option at will, could probably sit approximately 45 minutes to an hour at a time, not leaving the work station, can stand and walk six hours out of an eight-hour day, need to change their position approximately plus or minus an hour, no climbing of ladders, ropes or scaffolds, limited to occasional stooping, crouching, crawling and kneeling. Are there any jobs for this hypothetical individual in your opinion to perform in the United States?

(CAR 55).

In response, the VE testified that such an individual would be operating at less than the full range of light or sedentary, which would erode the number of jobs that fit in that category, especially given the necessity of the sit/stand option. However, the VE identified a cashier, 211.462-010, for which there are 110,000 jobs in California. Given the limitations in the hypothetical, the VE found probably 80 percent of those would be eliminated, down to about 22,000 with the option of getting off their feet periodically. In addition, the VE identified a mail clerk, 209.687-026, with 10,000 positions available, but the probably half of those eliminated

1  based on the restrictions.  Finally, the VE identified office helper, 239.567-010, with about
2  16,000 positions available and no significant erosion in that position.  (CAR 56).

3          The first issue is whether the hypothetical the ALJ posed to the vocational expert
4  was sufficient, whether it identified all of plaintiff's limitations.  As discussed above, the court
5  finds the ALJ did not err in his analysis of the medical opinions, nor in discounting plaintiff's
6  credibility.  The hypothetical the ALJ posed to the VE took into account the limitations he
7  accepted and set forth in the RFC assessment.  While the ALJ's determination as to plaintiff's
8  RFC may not have been the only one possible, it is supported by substantial evidence, and as
9  such will not be disturbed here.  Similarly, the hypothetical the ALJ posed to the VE included all
10 of the limitations he determined to be supported by the evidence, and since that determination
11 was not erroneous, the hypothetical posed must be considered legally adequate.  The court,
12 therefore, finds no error in the ALJ's hypothetical, nor in the VE's testimony based thereon.

13         The second issue is the ALJ's failure to inquire as to whether the VE's testimony
14 was consistent with the DOT.  Plaintiff argues that it is apparent that the VE's testimony does
15 conflict as the DOT does not address a sit/stand option, and given plaintiff's postural limitations
16 for climbing, stooping, crouching, crawling, and kneeling.  Defendant acknowledges the ALJ
17 erred in failing to ask the VE whether his testimony was consistent with the DOT.  However,
18 defendant contends that such an error is harmless because there is no actual conflict.

19         Once a claimant establishes he can no longer perform his past relevant work, the
20 burden shifts to the Commissioner to establish the existence of alternative jobs available to the
21 claimant, given the claimant's age, education, and work experience.  See Burkhart v. Bowen, 856
22 F.2d 1335, 1340 (9th Cir. 1988) (citing Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir.
23 1986)).  This burden can be satisfied by either applying the Medical-Vocational Guidelines
24 ("Grids"), if appropriate, or relying on the testimony of a VE.  See id.  The testimony of a VE
25 should generally be consistent with the DOT, although neither "trumps" the other if there is a
26 conflict.  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is an

inconsistency between the VE's testimony and the job descriptions in the DOT, the ALJ must resolve the conflict.  See id. (citing SSR 00-4p).

Pursuant to Social Security Ruling (SSR) 00-4p, the Ninth Circuit has found the ALJ is explicitly required to determine if a VE's testimony deviates from the DOT, and if so there must be sufficient support for that deviation.  See id.  Specifically, the Court found:

> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary of Occupational Titles*]."  SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Id. at 1152-53 (emphasis in original).  Only after making such a determination, and obtaining an explanation if necessary, can the ALJ rely on the testimony of a VE.

As set forth above, the ALJ posed a hypothetical to the VE which included plaintiff's limitations, including the need for a sit/stand option, as well as no climbing of ladders, ropes or scaffolds, limited stooping, crouching, crawling and kneeling.  In response, the VE identified three positions, with some elimination in availability given plaintiff's sit/stand option limitation.  The ALJ never asked the VE whether his testimony was consistent with the skills as set forth in the DOT for the positions identified.

Plaintiff argues there is a conflict between the DOT positions identified and plaintiff's limitations.  However, he fails to identify what the conflicts are.  Defendant argues there is no conflict; at best the DOT does not address a sit/stand option.  In reviewing the DOT positions identified by the VE, the court finds no apparent conflict.  None of the positions identified include the necessity of climbing, balancing, stooping, kneeling, crouching, or crawling.  Thus, plaintiff's argument as to a conflict with respect to those limitations is unclear. Additionally, the undersigned agrees with defendant that the DOT does not address the issue of a

sit/stand option. Thus, there is no apparent conflict as to that limitation.

Defendant's second argument is that any error was harmless. The Ninth Circuit has indicated such an error can be harmless. The Court identified two situations where such an error can be harmless: if there is no conflict or if the VE "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154 n.19 (citing Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995). While there is no clear conflict, and plaintiff fails to articulate where such a conflict exists, there is support for the VE's determination. Specifically, the VE addressed the sit/stand option, effectively eliminating 80 percent of the available jobs for the position of cashier, and half of the available jobs for the position of mail clerk, but noting no significant erosion in available jobs for the position of office helper. Thus, to the extent there is potential for conflict between the VE's testimony and the DOT, the undersigned finds the VE's testimony sufficient to account for any inconsistency. Any error by the ALJ in failing to affirmatively inquire as to whether the VE's testimony conflicted with the DOT was harmless.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 20) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 23, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE